IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY JAFFESS and PATRICIA WILKINSON, | : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| COUNCIL ROCK SCHOOL DISTRICT, | : | No. 06-0143 |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                  **October 26, 2006**

Plaintiffs Jay Jaffess and Patricia Wilkinson bring this action against Defendant Council Rock School District ("the District") seeking student accommodation and special education support for their son HJ, pursuant to the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act. Presently before the Court are the parties' cross-motions for summary judgment.[1] For the following reasons, the Court grants summary judgment in favor of the District.

**I.   BACKGROUND**

At the time Plaintiffs' filed the Complaint, HJ was a sixteen year-old student attending a public school within the District. (Compl. ¶ 5.) In elementary school, the District determined that HJ was eligible for special education services based on a diagnosed learning disability. (Admin. R. Ex. 2 (Special Educ. Appeals Panel Op.) at 1.) Before the start of the 2004-2005 academic year, Plaintiffs requested that HJ be given specially designed instruction ("SDI"). The District, however, maintained that HJ was no longer qualified under the IDEA to receive SDI because he had met all of the goals in his previous individualized education program ("IEP") and no longer needed

---

[1] Plaintiffs have also moved to supplement the administrative record. This issue is addressed below.

accommodation. (Def.'s Mot. for Summ. J. at 2-3.) Plaintiffs disagreed and requested a due process hearing. The parties were able to reach a settlement under which the District agreed to continue providing HJ with accommodations pursuant to a new IEP for the 2004-2005 school year. (*Id.*) This new IEP reflected HJ's numerous strengths, including math computation and problem solving, reading comprehension, and written expression. (*Id.*) "Self-advocacy" was the only "need" identified in the 2004-2005 IEP. (*Id.*) HJ's accommodations included a Study Skills class, preferential seating, extra time to complete tests and projects, access to teacher's notes, a "note buddy," a second set of textbooks, and the option to retake failed exams. (Admin. R. Ex. 12 at SD 02 (2004 IEP).)

In January 2005, the District reevaluated HJ and issued an Evaluation Report ("ER"). (Def.'s Mot. for Summ. J. at 6.) The ER stated that HJ no longer required SDI to benefit meaningfully from his education program. (Admin. R. Ex. 12 at SD 08-5 (2005 Evaluation Report).) The District based its determination primarily on the findings of Dr. Lamberth, a school psychologist, who consulted with HJ's teachers, observed HJ in class, and administered cognitive and achievement tests. (Admin. R. Ex. 8 (Hr'g Tr. July 26, 2005).) Dr. Lamberth found no significant discrepancy between HJ's intellectual ability – as measured by his full-scale IQ score – and his achievement. (*Id.* at 271). In accordance with the ER, the District issued a Notice of Recommended Placement to mainstream HJ. (Admin. R. Ex. 2 at 2.) Plaintiffs filed a dissent to the ER, arguing that HJ has a learning disability and needs SDI to fully access and benefit from his educational environment. (Admin. R. Ex. 12 at SD 08-9.)

The parties could not resolve their differences with regard to HJ's educational accommodations, and a due process hearing was conducted over the course of multiple sessions in

the summer of 2005. (*Id.*) After hearing testimony and considering the admitted evidence, the Hearing Officer agreed with the District that HJ was no longer eligible for special education support services under the IDEA or the Rehabilitation Act. (Admin. R. Ex. 7 (Special Educ. Hearing Officer Op.) at 7.) Although the Hearing Officer conceded that HJ had "an interesting cognitive profile[,]" she was persuaded by the testimony of Dr. Lamberth and HJ's teachers that HJ no longer needed SDI to benefit from his educational program. (*Id.* at 6.) In addition to articulating her belief that the District's evaluator and teachers were in a better position to assess HJ's academic needs, the Hearing Officer also remarked on the lack of credibility of Plaintiffs' expert witnesses. (*Id.* at 5). Moreover, the Hearing Officer noted that none of Plaintiffs' private evaluators spoke with anyone from HJ's school, observed HJ in the classroom, or even looked at HJ's actual school work product or report cards. (*Id.*)

Plaintiffs filed exceptions to the Hearing Officer's decision, and the case was reviewed by the Special Education Appeals Panel, which affirmed the Hearing Officer's ruling on October 14, 2005. (Admin. R. Ex. 2 at 8.) The Appeals Panel stated that "no showing has been made that, as a result of any disability asserted, Student requires specially designed instruction . . . ." (*Id.* at 6.)

On January 11, 2006, Plaintiffs filed a Complaint in this Court alleging that the District violated the IDEA and Section 504 of the Rehabilitation Act by denying HJ appropriate SDI. The parties filed cross-motions for summary judgment on October 13, 2006. Plaintiffs also seek to supplement the administrative record with additional evidence included in the appendix to their summary judgment motion.

**II.     STANDARD OF REVIEW**

In IDEA actions, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C) (2006). In evaluating such claims, "the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings" made during the administrative proceeding. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). The district court's standard of review when a party challenges the ruling of a state administrative agency has been characterized as "unusual" because:

> Although the District Court must make its own findings by a preponderance of the evidence, the District Court must also afford "due weight" to the [agency's] determination. Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct," and "[i]f a reviewing court fails to adhere to them, it is obliged to explain why." In addition, if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. . . . [T]his means that a District Court must accept the state agency's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." In this context, the word "justify" demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.

*Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citations omitted). If a district court considers evidence outside the administrative record, "it is free to accept or reject agency findings depending upon whether those findings are supported by the new expanded record and whether they are consistent with the IDEA requirements." *J.A. v. Mountain Lakes Bd. of Educ.*, Civ. A. No. 05-5953, 2006 WL 2583445, at *4 (D.N.J. Sept. 6, 2006) (citing *S.H. v. State Operated Sch. Dist. of Newark*, 336 F.3d 260, 269-70 (3d Cir. 2003)). The burden of proof in an action challenging an IEP falls upon the party seeking relief, *Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528,

537 (2005), and remains on that party throughout the case. *Oberti v. Bd. of Educ. of Clementon Sch. Dist.*, 995 F.2d 1204, 1218-19 (3d Cir. 1993).[2]

### III.  DISCUSSION

#### A.  Supplementation of the Record

Despite conceding at the Rule 16 conference that discovery was complete, Plaintiffs now ask the Court to admit additional affidavits completed after the close of the administrative proceeding as well as evidence excluded from consideration by the Hearing Officer.

The IDEA provides that a district court reviewing an administrative agency decision "shall hear additional evidence at the request of a party . . . ."  20 U.S.C. § 1415(i)(2)(C)(ii).  Despite the mandatory language of the statute, the decision whether to admit additional evidence is within the discretion of the trial court.  *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).  To aid in the exercise of that discretion, a district court must assess whether the evidence is "relevant, non-cumulative, and useful" for the purpose of determining if Congress' goal has been reached for the child involved.  *Id.*  Moreover, the district court must remain mindful of the "general framework of deference to state decision-makers that is dictated by the IDEA."  *Id.* at 758 (internal citations

---

[2] The administrative proceedings in this case began before the Supreme Court's decision in *Schaffer*, which provided that the burden in IDEA cases falls upon the party challenging the IEP.  126 S. Ct. at 537.  Prior practice within this Circuit had placed the burden on school districts, thus, the administrative hearings in this matter were conducted under an erroneous burden alignment.  Remand is not required, however, because the District prevailed even under the more onerous pre-*Schaffer* burden regime.  *See Greenwood v. Wissahickon Sch. Dist.*, Civ. A. No. 04-3880, 2006 WL 279085, at *1 (E.D. Pa. Feb. 3, 2006) (remanding case where hearing officer ruled against a school district under the previous burden regime); *Antoine M. v. Chester Upland Sch. Dist.*, 420 F. Supp. 2d 396, 401 n.7 (E.D. Pa. 2006).

omitted). Court consider the following: (1) whether a procedural bar prevented the introduction of the evidence at the administrative level; (2) whether the evidence was deliberately withheld for strategic reasons; (3) whether the introduction of the evidence at the district court level would be prejudicial to the other party; and (4) the potential impact on the administration of justice. *F.D. v. Holland Twp. Bd. of Educ.*, Civ. A. No. 05-5237, 2006 WL 2482574, at *3 (D.N.J. Aug. 25, 2006) (citations omitted).

Plaintiffs request that the Court admit the affidavit of Patricia Wilkinson, HJ's mother, presumably for the purpose of establishing how HJ has fared academically without SDI. After-acquired evidence, such as how a child performed in an alternative placement, "should be used by courts only in assessing the reasonableness of the district's initial decisions regarding a particular IEP or the provision of special education services at all." *Susan N.*, 70 F.3d at 762 (3d Cir. 1995). The Third Circuit has cautioned courts to recognize the "dangers inherent in [the] process of second-guessing the decisions of a school district with information to which it could not possibly have had access at the time it made those decisions . . . ." *Id.* Therefore, this affidavit is marginally probative at best. Moreover, the District would be highly prejudiced by the admission of this evidence at this late stage of the proceeding. *See id.* at *6 (declining to admit supplemental evidence partially because of prejudice to opposing party). Plaintiffs' proposed solution to the prejudice problem – allowing the District to submit counter-affidavits – would result in further delay. Accordingly, the Court declines to consider the affidavit of Patricia Wilkinson because it relates to evidence that post-dates the District's determination and its introduction would prejudice the District.

Plaintiffs also seek to introduce two expert reports excluded by the Hearing Officer during the administrative proceeding. A district court may consider "additional" evidence if it was

improperly rejected at the administrative level. *Town of Burlington v. Dep't of Educ. for Mass.*, 736 F.2d 773, 790 (1st Cir. 1984). Plaintiffs first seek to admit a report issued by Dr. Mills, a licensed psychologist, who reviewed HJ's file and provided a clinical impression of HJ's needs. (Pls.' Mot. to Supplement Admin. R. at 4.) Plaintiffs also proffer a report written by Dr. Fessler, who holds a Ph.D. in education and who administered a number of cognitive tests on HJ, including some not previously conducted by the other doctors who evaluated HJ.

Plaintiffs attempted to introduce Dr. Mills' expert report during the testimony of Dr. Moss, another expert witness for Plaintiffs. (Admin. R. Ex. 9 (Hr'g Tr. June 24, 2005) at 158-60.) The Hearing Officer did not err in declining to consider this report. While Plaintiffs correctly note that an expert may rely on hearsay in formulating his opinion, the hearsay evidence itself, in this case, another doctor's expert evaluation, is inadmissible. *See* FED. R. CIV. P. 703. Even assuming that Dr. Moss relied upon Dr. Mills' report in formulating his professional opinion, that fact does not provide sufficient grounds for admitting the report. Moreover, the evidence included in Mills' report is largely cumulative to the evidence admitted during the hearing. For example, Dr. Mills concludes, based exclusively upon her review of HJ's record, that HJ has a cognitive profile that includes a nonverbal learning disability, a disorder of written expression, and ADHD. (Pls.' App. in Supp. of Mot. for Summ. J. at 103.) Plaintiffs' other experts testified to this during the hearing. (Admin. R. Ex. 8 at 340 & Ex. 9 at 135, 142, 152, 155, 197.) Dr. Mills also asserts that HJ requires SDI, as Plaintiffs' testifying experts stated during the hearing. (Admin. R. Ex. 9 at 197.) Finally, the Court notes that Plaintiffs' request to include this evidence is untimely. Plaintiffs were well aware that the Hearing Officer excluded certain evidence at the time they filed the Complaint.

Plaintiffs also request that the Court consider Dr. Fessler's report. However, the pertinent

details of that report became part of the record when Dr. Fessler testified on July 26, 2005. (Admin. R. Ex. 8 at 278-82, 333, 337-75.) After reviewing the report, the Court finds it to be purely cumulative to evidence already in the administrative record.

Accordingly, the Court declines to supplement the record with any of Plaintiffs' proferred additional evidence.

### B. IDEA Claim

#### 1. Requirements of the IDEA

The purpose of the IDEA is to ensure that all children with disabilities have access to a free appropriate public education ("FAPE") including, where necessary, special education and related services to meet the unique needs of the child. *M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 360 (D.N.J. 2002) (citing 20 U.S.C. § 1400(d)(1)(A)). When a state provides "personalized instruction with sufficient support services to permit the child to benefit educationally" from the instruction, it has complied with the IDEA. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982); *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 184 (3d Cir. 1988).

The IDEA requires that a "child study team"[3] design an IEP that sets forth the goals and objectives that will be used to assess whether a disabled child is receiving a FAPE. *Mountain Lakes*, 2006 WL 2583445, at *6 (citing 20 U.S.C. § 1414(d)). A child's IEP is reviewed annually to determine whether the child is reaching the listed goals and is revised when necessary. 20 U.S.C. § 1414(d)(4). The IDEA also mandates that the child receive his FAPE in the "least restrictive

---

[3] A child study team consists of the child's parents, the regular and special education instructors, a curriculum specialist, and any other individuals with special knowledge or expertise related to the child's education. 20 U.S.C. § 1414(d)(1)(B).

environment." 20 U.S.C. § 1412(a)(5). The least restrictive environment is defined as "one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir. 1995).

### 2. Plaintiffs' IDEA Claim

Plaintiffs assert that the District violated the IDEA by terminating HJ's SDI. After a thorough, independent review of the record in this case, the Court concludes that the District has not violated the IDEA and accordingly grants summary judgment for the District on Plaintiffs' IDEA claim. The record supports the administrative decision that the District was not required to provide HJ with SDI in order for him to receive a FAPE in the least restrictive environment.

#### i. Evidence Presented by Plaintiffs

During the administrative hearing, Plaintiffs provided testimony from HJ, his parents, and expert witnesses in an attempt to establish that HJ has a disability and requires SDI. Dr. Moss, a developmental neuropsychologist, testified that HJ's academic performance was below expectation given his verbal IQ scores. (Admin. R. Ex. 9 at 151-52.) Dr. Moss also asserted that comparing the verbal IQ score, rather than the full-scale IQ score, to a child's performance results is proper in cases where there is a relatively large discrepancy in IQ sub-test scores. (*Id.*)

Dr. Cosden, a psychologist, also testified on behalf of HJ. He administered the Stanford Benet Intelligence Scales and the Woodcock Johnson Psychoeducational Battery, Third Edition. (*Id.* at 185.) Dr. Cosden found that, although HJ's full-scale IQ was 111 and fell within the average range, HJ's sub-test scores revealed a 19-point gap between his verbal (120) and non-verbal (101) performance. (*Id.* at 186-87.) Regarding the Woodcock Johnson Battery, Dr. Cosden concluded that

HJ performed "very well" on measures of oral language skill, his reading skills were above average overall, and he received an average score on reading fluency. (*Id.* at 189-90.) HJ also scored average or above average on three different math tests. (*Id.* at 190-91.) With respect to HJ's performance on the written language tests, Dr. Cosden found that HJ scored "a little bit above the average range" on the overall assessment. (*Id.* at 192.) Dr. Cosden pointed out, however, that HJ's performance on the writing sample sub-test was "significantly lower than would be predicted based upon his ability level from the intelligence test." (*Id.*) HJ scored in the average range or better on "retrieval fluency," "verbal comprehension," "incomplete words," "sound blending," and "picture recognition," on the cognitive functioning section of the Woodcock Johnson Battery, however, at least with respect to the retrieval fluency and picture recognition portions of the test, Dr. Cosden testified that HJ's performance was "inconsistent." (*Id.* at 194-95.)

Finally, Dr. Fessler, a nationally-certified school psychologist, discussed the results of HJ's Woodcock Johnson Battery and the Test of Written Language. (Admin. R. Ex. 8 at 336-40.) Like Dr. Cosden, Dr. Fessler found that HJ scored within the average range on writing sample sub-tests (spelling, fluency, and written expression) of the Woodcock Johnson writing assessment. (*Id.* at 337.) As for the Test of Written Language, HJ fell within the low average range on the contrived writing portion and the average range on the spontaneous portion of the test. (*Id.* at 339-40.) In concluding that HJ had a specific disability in written langague, Dr. Fessler, like Dr. Moss, compared HJ's performance scores with the verbal quotient of his IQ test rather than the full-scale IQ score. (*Id.* at 341-43.)

    ii.  *Evidence Presented by the District*

Dr. Lamberth, a certified school psychologist, testified for the District and unequivocally

concluded that HJ did not have a deficiency requiring specially designed instruction. (Admin. R. Ex. 8 at 255, 256, 262, 272.) Dr. Lamberth tested HJ on the Wechsler Intelligence Scale for Children (WISC-IV), and he obtained a full-scale IQ score of 105. (*Id.* at 251.) When broken down under the WISC-IV rubric, HJ attained a verbal comprehension index of 134, a perceptual reasoning index of 92, a working memory index of 97, and a processing speed index of 83. (*Id.*) Dr. Lamberth admitted that the difference between HJ's sub-test scores was "widely discrepant," but, in his opinion, the result simply suggested the need to further evaluate HJ's level of academic functioning to ensure it was commensurate with his cognitive profile. (*Id.* at 251-52.) Dr. Lamberth then discussed the results of HJ's Wechsler Individual Achievement Test (WIAT–II) and determined that HJ's functioning was between average and high average and that HJ's academic skills were "well developed." (*Id.* at 252-53.) When Dr. Lamberth compared HJ's results on the WIAT-II with his results on the WISC-IV, Dr. Lamberth concluded that there was no evidence of a learning disability. (*Id.* at 253.) He looked specifically for signs that HJ suffered from a non-verbal learning disorder or a disorder of written expression but did not find evidence of either. (*Id.* at 255.)

Dr. Lamberth also challenged the methods and conclusions of Plaintiffs' experts. According to Dr. Lamberth, neither Dr. Moss nor Dr. Fessler observed HJ's in-class performance, which unequivocally demonstrated that HJ did not need SDI. (*Id.* at 262.) As to HJ's purported learning disabilities, Dr. Lamberth stressed that: (1) the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) does not include a non-verbal learning disability among possible disorders; and (2) the diagnosis of a disorder of written expression was improper because Plaintiffs' experts incorrectly focused exclusively on HJ's IQ sub-test scores and failed to evaluate HJ's in-school work product. (*Id.* at 271.)

The District also proffered the testimony of HJ's teachers and certain District staff. These witnesses universally agreed that HJ did not require SDI to benefit meaningfully from his educational program. For example, Joanne Upham, a special education teacher at the District, explained that, while operating under his final IEP, HJ met the only measurable goal: independently verbalizing his educational needs. (Admin. R. Ex. 10 (Hr'g Tr. June 7, 2005) at 24, 28.) Upham's conclusion, that HJ did not require SDI to benefit educationally, was based on data collected by classroom teachers, the ER, reports regarding HJ's writing ability prepared by the State, report card grades, interim reports from teachers, and conversations with other team members. (*Id.* at 30.) Likewise, HJ's Chemistry, Study Skills, French, Geometry, English, and American Studies teachers all testified that HJ does not require SDI to succeed in their respective classrooms. (*Id.* at 44, 68, 82, 93, 107-108, 119.)

### iii.   *Plaintiffs' Have Failed to Establish an IDEA Violation*

The combination of Dr. Lamberth's testimony, the teachers' testimony, and the District's cross-examination of Plaintiffs' experts prevents this Court from concluding that the District violated the IDEA. Indeed, Dr. Moss agreed that HJ scored well above his grade level in terms of achievement on the WIAT–II and all his academic achievement scores were average or above. (Admin R. Ex. 9 at 166, 179.) Both Dr. Moss and Dr. Fessler admitted that they did not compare extensive samples of HJ's written work before diagnosing him with a disorder of written expression, even though that appears to be required by the DSM-IV. (*Id.* at 170; Admin. R. Ex. 8 at 358-59.) Moreover, Plaintiffs' experts conceded that there is only a discernible discrepancy between intelligence and performance when HJ's IQ score was broken into sub-test components. (Admin. R. Ex. 8 at 351.) Finally, even assuming HJ suffers some level of learning disability, the evidence

fails to establish that such disability interferes with HJ's ability to benefit meaningfully from an educational program without SDI.  *See J.A.*, 2006 WL 2583445, at *8; *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 328-30 (4th Cir. 2004) (in case involving child who was both gifted and learning disabled, IDEA does not require school to create environment where child thrives, only an environment in which he can materially benefit from his educational program); *Robinson v. Council Rock Sch. Dist.*, Civ. A. No. 05-1988, 2006 WL 1983180, at *6 (E.D. Pa. July 12, 2006) (school district did not violate IDEA by not providing more expansive accommodations where standardized scores indicated that student's existing IEP provided meaningful educational benefit).

In addition to the support in the record for the Hearing Officer's determination, the Court's duty to respect administrative fact-finding with respect to credibility furthers underscores the necessity of granting the District's summary judgment motion.  In cases such as this, where competing experts disagree as to the imperative of SDI or the very existence of a disability, a district court must exercise caution before examining the same record as the state administrative officer and reaching a different conclusion.  *See Shore*, 381 F.3d 199; *County Sch. Bd. of Henrico County v. Z.P.*, 399 F.3d 298, 306-307 (4th Cir. 2005).  The Court recognizes the complexities inherent in evaluating children who may be both gifted and learning disabled, and the proper judicial response when confronted with this scenario is not to second-guess the educational experts or the state agency charged with determining, in the first instance, whether a school district is complying with the IDEA's mandates. Because the record is devoid of any non-testimonial, extrinsic evidence sufficient to justify a conclusion that the Hearing Officer's credibility determinations were incorrect, and because the Court's own review of the record does not persuade the Court that Plaintiffs' have met their burden, summary judgment is granted in favor of the District on Plaintiffs' IDEA claim.

### C. Rehabilitation Act Claim

The Court also grants summary judgment for the District on Plaintiffs' Rehabilitation Act claim.[4] Where a student brings an action under the IDEA for failure to provide a FAPE, rejection of the IDEA claim often portends rejection of the correlated Rehabilitation Act claim as well. *See Michael C. v. The Radnor Twp. Sch. Dist.*, 202 F.3d 642, 654 n.13 (3d Cir. 2000) (where Rehabilitation Act claim is derivative of IDEA claim, former must fail where latter fails); *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995) ("There appear to be few differences, if any, between IDEA's affirmative duty and [Section] 504's negative prohibition."). There is no evidence in the administrative record to support a claim that the District discriminated against HJ because of his purported learning disability. As the Court has determined that the District did not violate the IDEA by declining to grant HJ SDI, and because there is no other possible basis for Plaintiffs to support the Rehabilitation Act claim, the Court grants summary judgment in favor of the District on Plaintiffs' Rehabilitation Act claim.

### V. CONCLUSION

Plaintiffs fail to establish that the District violated the IDEA by terminating HJ's SDI. HJ does not need accommodations to benefit meaningfully from his educational program, and the least

---

[4] Section 504 of the Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under a program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a) (2006).

restrictive environment is for him to be fully mainstreamed.  Accordingly, Defendant's motion for summary judgment is granted and Plaintiffs' cross-motion for summary judgment is denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY JAFFESS and PATRICIA WILKINSON, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| COUNCIL ROCK SCHOOL DISTRICT, | : | No. 06-0143 |
| Defendant. | : | |

## ORDER

**AND NOW**, this **26th** day of **October**, **2006**, upon consideration of the parties' respective motions for summary judgment, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant's motion for summary judgment (Document No. 17) is **GRANTED**.

2. Plaintiffs' motion for summary judgment (Document No. 22) is **DENIED**.

3. Plaintiffs' motion to permit supplementation of the administrative record (Document No. 20) is **DENIED**.

4. Defendant's motions to preclude supplementation of the record and to strike portions of Plaintiffs' appendix (Document Nos. 18 & 19) are **DENIED as moot**.

5. The Clerk of Court is directed to close this case.

BY THE COURT:

_____
**Berle M. Schiller, J.**